DUHÉ, Circuit Judge:
Defendant-Appellant Christine Wainuskis appeals the district court’s denial of her 28 U.S.C. § 2255 motion to set aside her judgment of conviction for violation of 18 U.S.C. § 924(e)(1) because of a change in the law, resulting from a clarification of the meaning of “use” of a firearm in Bailey v. United States, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). For reasons that follow, we affirm the district court’s denial of her motion.
I.
Following an investigation of her activities and a search of the residence she shared with Joseph Máteme (“Máteme”), Christine Wainuskis (“Wainuskis”) was indicted by a federal grand jury on four counts involving drugs and weapons: conspiracy to possess with intent to distribute; possession with intent to distribute; knowing use or carrying of a firearm during or in relation to a drug trafficking offense; and felon in possession of a firearm. Officers found methamphetamine, scales, baggies, other items associated with the packaging and distributing of illegal drugs, and 27 guns during the search. Wain-uskis was discovered in a bedroom of her residence, lying on a bed with a loaded gun tucked under the mattress. Her co-defendant, Máteme, was seated near two weapons, both of which were visible to the searching officers and easily accessible to him.
In exchange for the government dropping charges of conspiracy to possess with intent to distribute methamphetamine and of possession with intent to distribute that drug, Wainuskis pled guilty to the remaining two counts: violations of 18 U.S.C. 924(c)(1)[1] and 18 U.S.C. § 922(g) (felon in possession of a firearm).[2] She admitted that the underlying drag trafficking offense in her violation of § 924(c)(1) was possession with intent to distribute methamphetamine. After hearing the plea colloquy and reviewing the Presen-tencing Investigation Report (“PSR”), the district judge imposed the mandatory 5-year sentence for the violation of § 924(c)(1). He departed downward from the sentencing guidelines on the remaining count and assigned a 30-month sentence to ran consecutively.
Wainuskis moved to set aside her conviction and sentence for the violation of § 924(e)(1), based on a change in the law *185 resulting from the clarification of “use” of a firearm in Bailey v. United States, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). The district court referred the motion to a magistrate judge, who determined that the gun confiscated from under Wainuskis’s mattress at the time of her arrest was not “used or carried” in relation to a drug trafficking offense as defined in Bailey and in United States v. Andrade, 83 F.3d 729 (5th Cir.1996). Initially, the district court agreed with the magistrate judge’s recommendation to vacate the conviction and sentence imposed for the violation of § 924(e)(1), concluding that, under Bailey, the record did not establish a factual basis for such a conviction. Upon further examination of the plea colloquy and the PSR, the district court found that there was sufficient information to support Wain-uskis’s guilty plea and conviction and denied her motion.
Wainuskis appeals. She argues that the factual basis for her plea establishes no more than mere possession and is insufficient to support a conviction of “use.” The Government agrees that there is an insufficient factual basis to support her plea to violating the 18 U.S;C. § 924(c)(1) “use” prong under Bailey. It argues, however, that the plea colloquy record sufficiently supports a guilty determination under the unaffected “carry” prong of § 924(c)(1). We agree.
II.
Wainuskis’s guilty plea was taken under Rule 11 of the Federal Rules of Criminal Procedure. Her appeal is properly before this Court because we have ruled in An-drade, 83 F.3d 729, 731 (5th Cir.) that although
[a] plea of guilty typically waives all non-jurisdictional defects in the proceedings below ... nonetheless, in this particular context, where intervening law has established that a defendant’s actions do not constitute a crime and thus that the defendant is actually innocent of the charged offense, application of this rule is misplaced.
Bailey’s clarification of “use” provides Wainuskis with grounds to appeal her conviction and sentence.
We review a district court’s denial of a § 2255 motion under two standards. Because “acceptance of a guilty plea is considered a factual finding that there is an adequate basis for the plea,” the standard of review of this matter is clear error. United States v. Rivas, 85 F.3d 193, 194 (5th Cir. 1996), (citing United States v. Adams, 961 F.2d 505, 509 (5th Cir.1992)). We review the court’s conclusions of law de novo. United States v. Faubion, 19 F.3d 226, 228 (5th Cir.1994).
III.
A.
In denying Wainuskis’s motion to set aside her conviction and sentence imposed under a Rule 11 plea, the district court examined both the facts available at the time of the plea colloquy and those provided later by the PSR. According to the United States Sentencing Commission, Guidelines Manual, § 6Bl.l(c)(Nov.l995), when a dismissal of charges is part of a plea agreement, the court “shall defer its decision to accept or reject” any plea agreement “until there has been opportunity to consider the presentence report.” The Government dismissed two counts against Wainuskis in exchange for her guilty plea. The district court relied on both the plea colloquy and PSR to find a factual basis to support her guilty plea. Logically, it must examine the same information to determine if there is a factual basis to set aside her conviction.
This Court has upheld the district court’s use of the PSR to find an insufficient factual basis and to reject a plea agreement. United States v. Foy, 28 F.3d 464 (5th Cir.1994). See also United States v. Gulledge, 491 F.2d 679 (5th Cir.1974).[3]
Based on the U.S. Sentencing Guidelines and our jurisprudence, the district court was *186 correct in considering all information at its disposal to determine that a factual basis for WainusMs’s guilty plea existed and to deny her motion to set aside her conviction and sentence.
B.
Wainuskis argues, that Bailey’s clarification of “use” in § 924(c)(1) requires the setting aside of her sentence and conviction. “Use” under Bailey connotes more than mere possession of a firearm by a person who commits a drug offense.[4] The Bailey Court held that the language, context and history of § 924(c)(1) indicates that the Government must show “active employment” of the firearms.[5] Reviewing the language of the statute and Congressional intent, the Court noted that nothing indicates that Congress, when it provided the two terms “use” and “carry,” intended that they be understood to be redundant. ‘We assume -Congress used two terms because it intended each term to have a particular nonsuperfluous meaning. A firearm can be used without being carried and a firearm can be carried without being used.”[6]
In clarifying “use” the Court provided an illustrative list: “brandishing, displaying, bartering, striking with and ... firing or attempting to fire a firearm.”[7] More importantly, the Court noted that use cannot extend to encompass the action of an offender who has hidden a gun where he can grab and use it if necessary.[8]
Wainuskis’s plea colloquy established that she was in a back bedroom during the search of her residence. A pistol was found under a mattress within arm’s reach at the time that the search was executed. The PSR indicated that Wainuskis -was lying on the bed in that bedroom and that the semi-automatic pistol was loaded.- Under Bailey, Wainuskis merely possessed the "weapon and did not actively employ it at the time of the search. She is correct in stating that under the' Bailey clarification of “use” she has not violated .§ 924(c)(1).'
C.
Section 924(e)(l)constitutes one offense, but can be violated in either of two ways: using or carrying. Bailey recognized that the “carry” prong of § 924(c)(1) brings some offenders who would not satisfy, the “use” prong within the reach-of the statute.[9]
This Court recently held that, because Bailey did not address the “carry” prong of § 924(c)(1), it had no effect on prior precedent analyzing this language. United States v. Rivas, 85 F.3d 193, 195 (5th Cir.) cert denied, — U.S. -, 117 S.Ct. 593, 136 L.Ed.2d 521 (1996); United States v. Tolliver, 116 F.3d 120, 127 (5th Cir.), cert. denied, - U.S. -, 118 S.Ct. 324, 139 L.Ed.2d 251 (1997); United States v. Muscarello, 106 F.3d 636, 638 (5th Cir.1997), cert. granted, - U.S. -, 118 S.Ct. 621, 139 L.Ed.2d 506 (1997).[10] Our “carry” jurisprudence, when vehicles are not involved, requires a showing that the gun was within arm’s reach during the commission of the drug offense. Tolliver, 116 F.3d at 127, (citing United States v. Pineda-Ortuno, 952 F.2d 98, 103 (5th Cir.1992)). We have stated that mere possession of the firearm is insufficient to support a conviction under the “carry” prong. Tolliver, 116 F.3d at 127; United *187 States v. Hall, 110 F.3d 1155, 1161 (5th Cir. 1997).
In Pineda-Ortuno, we noted that nothing in the legislative history of § 924(c)(1) suggests that the term “carry” should be construed as having any meaning beyond its literal meaning. That literal meaning we derived from Webster’s Third International Dictionary, 353 (1966): “to move while supporting (as in a vehicle or in one’s hands or arms): ... sustain as a burden or load and bring along to another place.” We also recognized that the “easy reach” element arose from a judicial expansion of “carrying” in a non-vehicle context. Pineda-Ortuno, 952 F.2d at 104. Earlier we explained in U.S. v. Blankenship, 923 F.2d 1110, 1116 (5th Cir. 1991) that a person cannot be said to “carry” a firearm without at least a showing that the gun is within reach during the commission of the drug offense.[11]
More recently in U.S. v. Fike, 82 F.3d 1315 (5th Cir.1996), we reiterated the necessity of applying a literal meaning to “carry,” again based on Webster’s definition. Although Fike involved a vehicle, which satisfied the element of transportation, the firearm was also within easy reach, thus sufficiently supporting a jury finding of “carrying.” Most recently in U.S. v. Thompson, 122 F.3d 304 (5th Cir.1997), we held that carrying involves moving or transporting the firearm in some manner or bearing the firearm upon one’s person. It is clear that our jurisprudence in a non-vehicle context requires both that the-weapon be moved in some fashion and that it be within arm’s reach (readily accessible) for a violation of the “carry” prong of § 924(c)(1).[12]
There is sufficient information before this Court to find that Wainuskis’s conduct satisfies both the transportation and the ready accessibility elements of the “carry” prong. According to the PSR, Wainuskis, her mother, and Máteme lived together in Petal, Mississippi. During a five-month period beginning in January 1993, officers searched the trash at the residence, finding numerous labels and boxes for firearm accessories. At some point during that time, Wainuskis’s mother moved out. Confidential informants told the government that the defendants had possession of firearms, based on what they had seen when they bought drugs from Wainuskis and Máteme.
The defendants moved to Ellisville, Mississippi around July 12, 1993, and a search warrant was executed there July 29, 1993. Twenty-seven guns were found in the residence the two shared. A semi-automatic pistol was seen on a stool next to Máteme; a 9mm assault pistol was observed within his reach. Officers discovered Wainuskis lying on a bed with a loaded gun under the edge of the mattress.
Wainuskis agreed at the plea colloquy that she was discovered in a back bedroom and that the pistol was within arm’s reach at the time the search was executed. She did not dispute, either, the more specific PSR that described her as “lying in a bed in a rear bedroom, ... a loaded semi-automatic pistol lying in the edge of the mattress between the mattress and the night stand.” She admitted that the two had moved from Petal where they were drug trafficking to Ellisville. She acknowledged that they had bought guns to protect their drugs and that they had continued to sell drugs when they moved to Ellis-ville. From both the PSR and the plea colloquy we could infer that the defendants, in their move, took with them the weapons they had acquired while in Petal to protect their drugs. Because Wainuskis was not charged with using or carrying a particular firearm, we could infer that the gun under the mattress was one of those transported by the defendants and kept within reach for Wainuskis to protect their drugs.
*188 The findings and recommendations proposed by the magistrate judge provide an additional link between Wainuskis, the weapon under the mattress, and the transportation element of “carry.” He found that ,‘Wainuskis secreted under her mattress a loaded firearm which was discovered during a search____” In her traverse to the Government’s response to her motion to set aside her conviction, Wainuskis merely contested the application of pre-Bailey “use” to her situation, not that she was the one who had hidden the weapon. Pursuant to 28 U.S.C. § 636(b)(1) she had 10 days in which to object to specific findings of fact, but she did not.
In entering her guilty plea to a violation of § 924(c)(1), Wainuskis admitted all the facts necessary to show that the gun was “carried” within the context of our jurisprudence.[13] Not only did she acknowledge her proximity to a weapon she and Materne had purchased to protect their drugs, but she also did not dispute that she secreted that weapon under the mattress. Additionally, her admissions indicate that there were guns present both in Petal and in Ellisville. It is only logical to infer that she played a part in their move from one residence to the other. Under our “carry” jurisprudence, these facts are sufficient to support Wairiuskis’s guilty plea to a violation of § 924(c)(1) and a denial of her motion to set aside her conviction.
D.
18 U.S.C. § 2[14] provides grounds to uphold Wainuskis’s conviction under both the “use” prong and the “carry” prong of § 924(c)(1) as an aider and abettor of Ma-terne’s crime.[15] That the couple lived together and sold drugs together for a period of five months indicates the type of on-going offense to which this doctrine may be easily applied. In U.S. v. Williams,[16] we stated that, to be found liable for another’s criminal activity, an aider and abettor must share in the criminal intent to use the firearm during a drug trafficking offense. This requires that Wainuskis have knowledge of the presence of firearms.[17] She admitted that she and her co-defendant purchased guns to protect themselves and their drugs. Confidential informants told of seeing guns during their drug deals with the two defendants. Wainuskis and Materne lived together in a house where 27 guns were found.
Agents saw Materne seated in the kitchen with a gun visible next to him on a stool and another loaded weapon visible within arm’s reach. The open display of these weapons satisfies the Bailey “use” requirement for his conviction under 924(c)(1).[18] Wainuskis’s *189 conduct, her continued association with Má-teme in the drug dealing scheme, indicates her intent to bring about the success of the venture. It is evident that Wainuskis possessed both the necessary knowledge,[19] that weapons were available for Mateme’s use, and the intent to be convicted as an aider and abettor in Mateme’s crime.
As an aider and abettor, Wainuskis can also be found guilty of a violation of the “carry” prong of § 924(c)(1). After Wain-uskis’s mother had moved from Petal, only Wainuskis and Máteme remained in that residence. They moved together to Ellisville. It is a reasonable inference that one or the other had to move the guns theywere known to have possessed in Petal to their new residence in Ellisville where 27 guns were found. Because there is no evidence of any other occupants in the residence, it is also reasonable to infer that one of the two placed the guns found with Máteme so that they were readily accessiblé to him and that one of the two placed the gun found under the mattress where Wainuskis was lying.
IV. CONCLUSION
For the foregoing reasons, we affirm the district court’s denial of WainusMs’s motion to set aside her conviction and sentence.
DENIAL AFFIRMED.

. The pertinent portion of the statute reads as follows:
"Whoever, during and in relation to any crime of violence or drug trafficking crime ... uses or carries a firearm, shall, ... be sentenced to imprisonment for five years.... ”

. The defendant had an earlier conviction for possession for Sale of a Controlled Substance (methamphetamine) in California, for which she was on probation at the time of her arrest for the current offense.

. Although the plea colloquy did not establish a sufficient factual basis for the defendants’ pleas, the district court could develop an adequate record at the sentencing proceeding to sustain the pleas. Gulledge, 491 F.2d at 679.

. 516 U.S. at 143-45, 116 S.Ct. at-506.

. Id.

. Id. at 145-47, 116 S.Ct. at 507.

. Id. at 147-49, 116 S.Ct. at 508.

. Id.

. Id. at 149-51, 116 S.Ct. at 509.

... Muscarello recognized no change in prior precedent analyzing "carrying” prong at least where the gun is possessed in a motor vehicle. There the defendant knowingly possessed a loaded pistol in the glove compartment of his truck. The vehicle itself was used as a means of carrying the weapon. [W]e' observe[d] that what constitutes "carrying” under § 924(c)(1) when the firearm is possessed in the motor vehicle differs substantially from what constitutes carrying a firearm on a person because the means of carrying is the vehicle itself. 106 F.3d at 639, citing United States v. Pineda-Ortuno, 952 F.2d 98 (5th Cir. 1992).

. Blankenship was found not to have violated the "carry” prong of § 924(c)(1) because he was arrested some miles away from the motel where he had hidden a gun under a mattress.

. We recognize that the following phrasing is found in U.S. v. Hall, 110 F.3d 1155 (5th Cir. 1997): "[W]e conclude that the prosecution, to sustain a conviction under the ‘carry’ prong of § 924(c)(1), must show that the firearm was transported by the defendant — or was within his reach — during and in relation to the predicate crime.” The text of the decision, citing the Fifth Circuit precedent discussed above, and the facts of Hall, however, do not reflect that a carry violation is proved by either element. It is clear that we require both transportation and ready accessibility for a "carry” violation.

. The record clearly indicates that Wainuskis possessed drugs with an intent to distribute both when she lived in Petal and when she moved to ■Ellisville. By: its nature, this violation is an ongoing offense, rather than a one-tijne transaction. Likewise, it is clear from confidential informants, narcotics agents, and Wainuskis’s own testimony that guns played a part in the offense in both locations. Thq obvious inference that the,guns owned by Wainuskis and Materne went with them as they transferred their base of operations to Ellisville satisfies the § 924(c)(1) requirement that the weapons violation occur during and in relation to a drug trafficking offense. Despite the dissent’s assertion, it is clear that Wainuskis moved, secreted, and positioned herself within arm's reach of the gun for the purpose of protecting the drugs she possessed and intended to distribute,

. 18 U.S.C. § 2(a) reads:
Who ever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission,.is punishable as a principal.

. It is not necessary, as the dissent suggests, that Materne be convicted of a § 924(c)(1) violation for Wainuskis to be guilty as an aider and abettor. See, e.g., United States v. Pearson, 667 F.2d 12 (5th Cir.1982)(upholding a conviction of aiding and abetting when the charges against the other defendant were dismissed) and United States v. Robins, 978 F.2d 881 (5th Cir.1992)(hoIding that where one of the principals was acquitted the other defendant's conviction of aiding and abetting him was not consequently reversed because sufficient evidence existed to find aiding and abetting.) Materne's withdrawal of his guilty plea to § 924(c)(1) is akin to a- dismissal or an acquittal. Because we find sufficient evidence of aiding and abetting on Wainuskis's part, Mateme’s withdrawal of a guilty plea to § 924(c)(1) is of little consequence.

. 985 F.2d 749, 754 (5th Cir.1993).

. Id. at 755.

. The dissent's comment that a weapon in plain view does not equate to "use” according to Bailey seems directly contrary to the Supreme Court's illustration of "use” as “the silent but *189 obvious and forceful presence of a gun on a table.” 516 U.S. at 148, 116 S.Ct. at 508.

. See Id.